**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA
        **Plaintiff,**

                **v.**

DIEGO FERNÁNDEZ SANTOS,
        **Defendant**

**CRIMINAL NO.** 23-063 (FAB)

**OPINION AND ORDER**

BESOSA, Senior District Judge.

Before the Court is defendant Diego Fernández-Santos ("Fernández")'s objection to the report and recommendation ("R&R") issued by Magistrate Judge Marcos E. López (Docket Nos. 110), regarding Fernández's motion to suppress physical evidence seized from his home, and statements he made to authorities after his arrest. (Docket No. 114.) The United States opposed the defendant's objections but did not object to the magistrate judge's report and recommendation. (Docket No. 115.)

The magistrate judge held several hearings regarding the defendant's motion to suppress during which the United States and Fernández presented evidence. (Docket Nos. 73, 82.) The magistrate judge then issued a R&R recommending that the motion suppress be granted with respect to the firearms and ammunition found in a

fanny pack in Fernández's back yard, but denied with respect to
the firearms and ammunition found inside his home, and statements
made to the police by the defendant after his arrest. (Docket No.
110.)

For the reasons discussed below, the Court **ADOPTS IN PART** and
**REJECTS IN PART** the magistrate judge's R&R, (Docket No. 110), and
**GRANTS IN PART** and **DENIES IN PART** defendant Fernández's motion to
suppress. (Docket No. 20)

## I. Factual Background

The magistrate judge issued a recommended findings of fact
based on evidence presented during several suppression hearings.
(Docket Nos. 73, 82.) After careful review of the record, the Court
**ADOPTS** the magistrate judge's factual findings, and summarizes the
pertinent parts as follows.

On February 14, 2023, at approximately 3:00 a.m., the Puerto
Rico Police Department ("PRPD") executed an arrest warrant at the
defendant's residence. PRPD's Special Arrest Unit, led by Sergeant
Rafael Gómez Águila ("Sgt. Gómez Águila"), conducted a forced entry
and began sweeping the first floor.  Agent Luis Alexander Gómez
("Agent Gómez"), from the PRPD's Caguas Drugs Division, testified
that right before the Special Arrest Team entered Fernández's
residence, he saw a silhouette of a person at one the residence's
second-floor windows.  Agent Gómez immediately began to move toward

the residence's backyard where he allegedly observed Fernández throw a black fanny pack approximately ten feet away from the residence's back door. Agent Gómez also testified that, thereafter, he reentered the residence and the black fanny pack remained untouched where it landed.

After clearing the first floor, the Special Arrest Unit proceeded up the stairway to the second floor. Both the defendant and his mother, the only occupants of the residence, were arrested on the second floor. Later, Sgt. Gómez-Águila and his team conducted a security sweep of the second floor. While conducting the sweep, Sgt. Gómez-Águila found what appeared to be a rifle in plain sight within a bedroom closet. Once the sweep of the second floor was completed, Sgt. Gómez Águila notified Agent Gómez of the rifle found upstairs in the bedroom closet. As agent Gómez examined the rifle, he noticed the handle of a second rifle protruding from a blue backpack. Agent Gómez proceeded to check the first rifle and determined it was not a real rifle. Next, Agent Gómez checked the second rifle that was protruding from the blue bag and verified that it was a real rifle. Agent Gómez also testified that as he removed the second rifle from the blue bag, he observed various types of ammunition within the bag. Shortly after, Agent Gómez read the defendant his Miranda rights. Fernández remained silent.

Several hours later, around 1:30 p.m. on February 14, 2023, Homeland Security Investigations ("HIS") Task Force Officers ("TFO") Edwin Guzmán and Edwin Vázquez-Malavé arrived at the Caguas Drug Division to interview the defendant. As the interview began, the HSI TFOs provided the defendant with a <u>Miranda</u> form (the "HSI <u>Miranda</u> Form").   During this time, Agent Gómez entered the interview room and asked the defendant to sign a PRPD <u>Miranda</u> form (the "PRPD <u>Miranda</u> Form") after reading his rights to him again and explaining that they were the same rights he read to the defendant at his residence.   Fernández signed the PRPD <u>Miranda</u> Form explicitly noting that he **did not** waive his rights,  but signed the HSI <u>Miranda</u> Form indicating that he **affirmatively waived** his rights.  Both forms were dated February 14, 2023, at 1:50 p.m. After Fernández signed the PRPD <u>Miranda</u> Form, Agent Gómez left the interview room, and the defendant proceeded to talk to the HSI TFOs. During the HSI interrogation, Fernández made incriminating statements about the fanny pack found in his backyard and his status as a convicted felon.

On December 21, 2023, video of the morning of Fernández's arrest was introduced into evidence.  This video contradicted the testimony provided by Agent Gómez about that day.  Agent Gómez had testified earlier that he saw the defendant throwing a black fanny pack into the backyard, which was then left under the uninterrupted custody of Agent Gotay.  After reviewing the video evidence, the

magistrate judge determined that it was "quite possible" that Agent Gómez had never seen the defendant throw the black fanny pack and that Agent Gotay had not been in the backyard guarding the fanny pack at all.

## II. Legal Standard

A district court may refer a pending motion to a magistrate judge for a report and recommendation ("R&R"). See 28 U.S.C. § 636(b)(1)(B); Local Rules Dist. P.R.R. 72(a). Any party adversely affected by the R&R may file written objections within fourteen days of being served with the magistrate judge's report. See 28 U.S.C. § 636(b)(1); Local Rules Dist. P.R.R. 72(d). A party that files a timely objection is entitled to a de novo determination of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Failure to comply with this rule precludes further review. See Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).

In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985); Álamo Rodríguez v. Pfizer Pharmaceuticals, Inc., 286 F. Supp. 2d 144, 146 (D.P.R. 2003) (Domínguez, J.). Furthermore, the Court may accept those parts of the R&R to which the parties

do not object.  See Hernández-Mejías v. General Elec., 428 F. Supp.
2d 4, 6 (D.P.R. 2005) (Fusté, J.) (citation omitted).


**III. Discussion**

   **A. Motion to Suppress and Recommendations.**

   Defendant Fernández moved to suppress both the statements he
made after his arrest and the firearms and ammunition seized from
his home.  In support of his motion, Fernández argued (1) that the
items seized in his back yard and in the bedroom closet were taken
as a result of an unconstitutional search and no exception to the
warrant requirement exists, and (2) that the incriminating
statements made to officers regarding his ownership of the black
fanny pack and his status as a convicted felon were the product of
an interrogation which should have ceased once he invoked his right
to counsel and his right to remain silent.

   The magistrate judge recommended that the motion to suppress
be granted with respect to the firearms and ammunition found in
the fanny pack in defendant's backyard, but denied with respect to
the items seized from the defendant's second floor bedroom and the
statements he made to officials.  The magistrate judge based his
recommendations on the following legal conclusions:

   1. The defendant has standing pursuant to the Fourth Amendment
      of the United States Constitution because he lived at the

      residence where the arrest occurred, had a bedroom in the home, and had lived there for nearly two years.

2. The contents of the black fanny pack should be suppressed because they were obtained in violation of the Fourth Amendment and no exceptions to the warrant requirement exist to justify this search and seizure.

3. The rifle and ammunition found inside the bedroom closet should not be suppressed because they were in plain view and recovered during a legitimate protective sweep.

4. The defendant's statement to HSI TFO's should not be suppressed because he did not unequivocally invoke his right to counsel and his right to remain silent was not violated.

5. The defendant's cellphone should not be suppressed because he did not request its suppression in a timely manner.

Neither party has objected to the first, second, or fifth conclusions. After careful review of the record, the Court agrees that the defendant has standing and **ADOPTS** the magistrate judge's recommendations regarding the suppression of the contents of the black fanny pack and the defendant's cellphone.

### B. Agent Gómez Credibility Determination

On December 21, 2023, video evidence was produced that called into question the veracity of Agent Gómez's testimony. The

defendant urges this Court to dismiss all of Agent Gómez's testimony as not credible citing the contradictions present in the video or, alternatively, to hold a *de novo* hearing.

"Absent objective evidence that contradicts a witness's story or a situation where the story itself is so internally inconsistent or implausible that no reasonable factfinder would credit it," there is no reason to undermine the magistrate judge's credibility determination. United States v. Colón-Torres, No. CR 20-175 (ADC), 2023 WL 4883182 (D.P.R. Aug. 1, 2023) (quoting United States v. Sierra-Ayala, 39 F.4th 1, 13 (1st Cir. 2022)). When a witness's credibly is challenged, courts are especially deferential to the magistrate judge's determination because they are best suited to "see [the witness] face-to-face or to appraise in person their demeanor and inflection." United States v. Guzman-Batista, 783 F.3d 930, 937 (1st Cir. 2015) (internal citations and quotation marks omitted).

Here, there is objective video evidence which the Court has carefully reviewed that contradicts Agent Gómez's narrative. The magistrate judge considered this evidence when recommending the suppression of the contents of the black fanny pack. In fact, the magistrate judge found that "even if Agent Gómez's account of the… arrest were true" the firearms and ammunition found in the black fanny pack should be suppressed. (Docket No. 110 p. 13.)

Furthermore, the magistrate judge cited corroborating evidence when relying on Agent Gómez's testimony to recommend that the firearms and ammunition taken from the house not be suppressed. Given his careful evaluation of the record, this Court finds no basis to disregard the magistrate judge's credibility determinations. Additionally, the Court rejects the defendant's request for a *de novo* hearing. The magistrate judge has already accessed Agent Gómez's credibility and the Court finds the issues presented in the defendant's motion to suppress are subject to disposition without further credibility determinations.

**C. The Protective Sweep Applies.**

Defendant Fernández argues that the magistrate judge erred in his recommendation denying the suppression of the rifle and ammunition recovered from the second-floor bedroom. He contends that the record does not support a finding that the bedroom was within permissible distance for a protective sweep.

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." Maryland v. Buie, 494 U.S. 325, 327 (1990). There are two types of protective sweeps. Id. at 334. The first, which does not require probable cause or reasonable suspicion, allows police officers to "look in closets and other spaces immediately adjoining the place of arrest from which an

attack could be immediately launched." Id.  The second kind of protective sweep can extend to areas beyond the immediately adjoining spaces but requires "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id. at 334.

The determination of which spaces are "immediately adjoining the place of arrest" is made on a case-by-case basis and requires courts to look at the "the particular configuration of the dwelling." United States v. Pruneda, 518 F.3d 597, 603 (8th Cir. 2008)  Ultimately, the determination of which areas are "immediately adjoining" depends on the "safety of the officers" and not "the percentage of the home searched." United States v. Thomas, 429 F.3d 282, 285–86 (D.C. Cir. 2005).  Courts have held that bedrooms and closets opening into the space where a defendant was arrested were "immediately adjoining" for purposes of the first kind of a *Buie* protective sweep. See Thomas, 429 F.3d at 287 ("Because the entrance to the bedroom was a straight shot down the hallway from the spot where Thomas was arrested, the bedroom was a place immediately adjoining the place of arrest from which an attack could be immediately launched."); see also United States v. Redrick, 48 F. Supp. 3d 91, 99 (D.D.C. 2014) (holding that while the defendant was arrested on the threshold of his apartment, the

apartment was small and the living room/dining room closet was immediately adjoining the place of arrest).

The defendant argues that there is not enough evidence in the record for a finding that the closet where the rifle was recovered was immediately adjoining the place of arrest, because, as the magistrate judge conceded, "the record is not clear on where" Fernández was arrested, nor does it provide any information about "how far the closet was from where [the defendant] was arrested." (Docket No. 110 p. 29.) The Government, in their opposition to the defendant's motion, argues that the rifle and ammunition were in plain view and found as a result of a lawful protective sweep. (Docket No. 115.) The Government also disputes the defendants claim that there is not sufficient evidence in the record to support their position, citing to the magistrate judge's findings that the "L-shaped hallway was a relatively small and confined space," and that "the rear-side hallway, where the defendant was arrested, was not wide nor long, and the bedroom with the closet where the evidence was found [is] small." Id at 2.

The magistrate judge determined that, while the exact location of the defendant's arrest was unknown, there was sufficient evidence to conclude that the second floor of the residence was small and an attack could have been immediately launched from the bedroom where the firearm and ammunition was

found. After a careful examination of the record, the Court finds that the magistrate judge's reasoning is persuasive.  The house in which defendant was arrested is small.  In fact, defendant's Exhibit A3 demonstrates that the residence is not much longer than the sedan parked in front of it. Furthermore, the evidence shows that the room in which the firearm and ammunition were found, and the hallway in which defendant was arrested, are also quite small. The Government and Fernández agree that of the three bedrooms in the second hallway, the firearm and ammunition were found in the first, and closest, bedroom to the hallway in which the defendant was arrested. (Docket No. 110 p. 28.)  This evidence establishes that an attack could have been immediately launched from the bedroom closet where the firearm was found. Thomas, 429 F.3d at 288 ("If an apartment is small enough that all of it 'immediately adjoin[s] the place of arrest' and all of it constitutes a space or spaces 'from which an attack could be immediately launched,' then the entire apartment is subject to a limited sweep of spaces where a person may be found." (citation omitted)); see also United States v. Zúñiga-Salinas, 952 F.2d 876 (5th Cir.1992) (holding valid a protective search of hotel room after defendant was arrested in hallway 12-15 feet from door.)

### D. The Firearm Found in Defendant's Closet was in Plain View

Fernández argues that even if the closet was within range of a protective sweep, the firearm and ammunition should be suppressed because they were not in plain view.  The defendant alleges that the magistrate judge erred in crediting Agent Gómez's testimony regarding the firearm and ammunition arguing that no other agent at the scene could corroborate his claims.

"[T]he plain view doctrine permits the warrantless seizure of an item if the officer is lawfully present in a position from which the item is clearly visible, there is probable cause to seize the item, and the officer has a lawful right of access to the item itself." United States v. Gamache, 792 F.3d 194, 199 (1st Cir. 2015) (citing United States v. Sánchez, 612 F.3d 1, 4–5 (1st Cir.2010); United States v. Jones, 187 F.3d 210, 219–221 (1st Cir. 1999)).  "In the 'plain view' context, this means that probable cause exists when the incriminating character of an object is immediately apparent to the police." Sanchez, 612 F.3d at 5.

Here, the defendant notes that Sgt. Gómez Águila's testimony claimed that he was the first to discover the fake rifle in the closet but did not see the butt of the second firearm protruding from the backpack.  The unnamed officer who was tasked with guarding the closet did not see the firearm in the blue backpack and it was only when Agent Gómez went up to inspect the closet

that the real firearm was found. (Docket No. 114 p. 5.) If the magistrate judge´s recommendation were based only on Agent Gómez's testimony, this argument might pass muster. Sgt. Gómez-Águila confirmed, however, that the photograph set forth in government's exhibit 5 was taken by service technicians before anything was moved from the closet.  Furthermore, it is plausible that Sgt. Gómez-Águila might have missed the second, real firearm on his first search considering the cluttered state of the closet, and the surrounding black shoes and garbage bag.  Regardless, the Court finds that the photograph taken by technicians displays the second firearm in plain view and accepts the magistrate judge's determination that Sgt. Gómez-Águila's testimony is credible.  The defendant contends that the magistrate judge's reliance on Sgt. Gómez-Águila is misguided because he retracted his testimony on cross-examination, reaffirming that he had not seen the second firearm.  This argument is unavailing because it does not discredit Sgt. Gómez-Águila's earlier testimony.  That he overlooked the second firearm does not negate his recollection that the photograph accurately represented how he found the closet before anyone interfered with its contents.

**E. The Ammunition was in Plain View.**

With regard to the ammunition, the defendant again disagrees with the magistrate judge's decision to credit the portion of Agent

Gómez's testimony that confirmed the evidence was in plain view when he removed the firearm from the backpack.   The magistrate judge found this part of Agent Gómez's testimony credible because there was a large amount of ammunition found in relation to the size of the bag, and because it is probable that someone would store their ammunition in close proximity to his weapons. Fernández, in turn, directs the Court's attention to government's exhibit 6 where the backpack is wide open, yet the ammunition is not in plain view.

After careful review of the evidence, the Court agrees with the magistrate judge's reasoning.   Even if the Court accept the defendant's claim that the drum magazine was not in the backpack, the large quantity of ammunition, including loose rounds present in government's exhibit 7 corroborate Agent Gómez's testimony that he could observe "many rounds" after pulling the firearm out of the bag.   While defendant is correct in asserting that government's exhibit 6 shows the backpack wide open and the ammunition is not in plain view, this photograph was taken before the firearm was removed.   It is reasonable to conclude, as the magistrate judge did, that after the firearm was removed from the bag, the large quantity of ammunition underneath became visible.

### F. Statements Made to HSI Should Be Suppressed

Fernández argues that the statements he made to HSI should be suppressed because he explicitly invoked his right to counsel by checking the box on the PRPB <u>Miranda</u> form stating: "I understand the rights that those warning bestow upon me, and I decided **TO NOT WAIVE** the same." (emphasis in original). The defendant also argues that he invoked his right to remain silent, an act that HSI agents disregarded minutes after he signed the form. (Docket No. 114 p. 10.)

A suspect who has received <u>Miranda</u> warnings may waive his or her rights and consent to an interrogation. <u>United States v. Carpentino</u>, 948 F.3d 10, 20 (1st Cir. 2020) (citing <u>Edwards v. Arizona</u>, 451 U.S. 477, 484 (1981)). However, "[i]f the accused indicates that he wishes to remain silent, the interrogation must cease. If he requests counsel, the interrogation must cease until an attorney is present." <u>Johnston v. Mitchell</u>, 871 F.3d 52, 57 (1st Cir. 2017) (quoting <u>Edwards</u>, 451 U.S. at 482) (internal quotation marks and citation omitted). "[O]nce a suspect has invoked the right to counsel, knowledge of that request is imparted to all law enforcement officers who subsequently deal with the suspect." <u>United States v. Porter</u>, 764 F.2d 1, 7 (1st Cir. 1985) (internal quotations marks and citations omitted).

If officers resume questioning after a suspect invokes the right to counsel, any Miranda waiver they obtain is presumed involuntary. Carpentino, 948 F.3d at 22. "This rule is designed to prevent officers from badgering a suspect into confessing in the inherently coercive environment of a custodial interrogation." Id. (citing Maryland v. Shatzer, 559 U.S. 98, 105 (2010)). Where officials violate these rules, evidence gathered as a result of the violation is generally excluded. Johnston, 871 F.3d at 58. "Invocation of the Miranda right to counsel requires at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." United States v. Sweeney, 887 F.3d 529, 536 (1st Cir.), cert. denied, 139 S. Ct. 322 (2018) (quoting Davis v. United States, 512 U.S. 452, 459 (1994)). A suspect must articulate his desire to have counsel "sufficiently clearly that a reasonable officer in the circumstances would understand the statement to be a request for an attorney." Davis, 512 U.S. at 459. A suspect thus invokes the right to counsel when he or she "'unequivocally demand[s] assistance, request[s] the lawyer's presence, *or otherwise clearly indicate[s] an unwillingness to make a statement absent presence of an attorney*.'" Carpentino, 948 F.3d at 24 (quoting United States v. Oquendo-Rivas, 750 F.3d 12, 19 (1st Cir. 2014)) (emphasis added).

In contrast with the <u>Miranda</u> right to counsel, "an invocation of the right to remain silent does not automatically bar the resumption of questioning at a later time." <u>Oquendo-Rivas</u>, 750 F.3d at 17 (citing <u>United States v. Andrade</u>, 135 F.3d 104, 107 (1st Cir. 1998)). If the defendant invokes his right to silence, the police must, before they can obtain a valid waiver, immediately cease questioning; allow some time to pass to avoid the risk of badgering a defendant into giving a waiver; and then, before questioning a defendant later, give a fresh set of <u>Miranda</u> warnings and obtain a waiver. <u>Michigan v. Mosley</u>, 423 U.S. 96, 104- 06 (1975). Courts apply a four-part test to determine "whether the resumption of questioning is permissible: (1) whether a reasonable period of time passed prior to the resumption, (2) whether the same officer resumed questioning, (3) whether the suspect received refreshed *Miranda* warnings, and (4) whether questioning concerned the same alleged crime." <u>Oquendo-Rivas</u>, 750 F.3d at 17 (citing <u>Mosley</u>, 423 U.S. at 104-06 (1975)) (additional citations omitted).

When interpreting whether a defendant has invoked his right to counsel or right to remain silent "the courts must presume that a defendant did not waive his rights." <u>North Carolina v. Butler</u>, 441 U.S. 369, 373 (1979). The burden to prove that a waiver is valid rests on the prosecution because the Court must "indulge every reasonable presumption against waiver of fundamental

constitutional rights." <u>Michigan v. Jackson</u>, 475 U.S. 625, 633
(1986) (internal quotation marks and citation omitted).

In this case, Fernández cites <u>United States v. Donald</u>, 84
F.th 59, 55 (1st Cir. 2023) and <u>United States v. Scott</u>, 693 F.3d
715 (6th Cir. 2013) in support of his suppression motion.
Fernández claims that regardless of which waiver form was signed
first, questioning should have immediately ceased once the
defendant invoked his right to counsel.  The defendant draws the
comparison to verbal invocations of <u>Miranda</u> rights, where
questioning should immediately cease if a suspect invokes their
rights mid-interrogation. (Docket No. 114 p. 11.)

In <u>Donald,</u> the First Circuit Court of Appeals did not fully
decide this issue because both parties agreed that the defendant
had invoked his <u>Miranda</u> rights by refusing to place a checkmark on
a line that read in part "I wish to talk to you. . . and waive my
Fifth Amendment Right."  The court in <u>Donald</u> did strongly imply,
however, that this disposition also pertained to the right to
counsel. <u>Donald</u>, 84 F.th at 66-97.  In <u>United States v. Scott</u>, 693
F.3d 715 (6th Cir. 2012) the Sixth Circuit Court of Appeals
encountered a similar situation where a defendant checked the box
that read "no" in response to question "having [your <u>Miranda</u>
rights] in mind, do you wish to talk to us now?"  In <u>Scott</u> the
Sixth Circuit reasoned that this was a clear invocation of the

defendant's right to counsel because the form specifically enumerated the right to "talk to your lawyer before answering any questions" and "to have him with you during questioning." <u>Scott</u>, 693 F.3d at 715. The court in <u>Scott</u> further stated that "if there is any ambiguity about Scott's right to counsel it is in the form itself, and not in his invocation of the right."  Id at 720.

Similarly, in <u>United States v. Johnson</u>, 400 F.3d 187, 196 (4th Cir.2005), the Fourth Circuit Court of Appeals found that the defendant had invoked his right to counsel by checking "no" on a <u>Miranda</u> waiver form in response to the question "Do you want to make a statement at this time without a lawyer." <u>Johnson</u>, 400 F.3d at 196. The Fourth Circuit Court of Appeals went on to hold; "We cannot interpret an ambiguity caused by the Government to be a waiver of the right that is indispensable to the protection of the Fifth Amendment privilege, that is, the right to counsel." <u>Id</u> at 196. (internal quotation omitted).  The Sixth Circuit Court of Appeals echoed its own reasoning when it also refused to interpret ambiguity caused by the Government against the defendant. <u>Scott</u>, 693 F.3d at 720 ("[w]e, too, refuse to fault the defendant for any ambiguities – intentional or otherwise – created by the Government) (quoting <u>Johnson</u>, 400 F.3d at 196).

In response to the defendant's opposition, the United States reiterates the magistrate judge's reasons on the matter.  In

essence, the Government claims that the statements should not be suppressed because: (1) a reasonable law enforcement agent "would not unequivocally understand defendant's actions to be a request for an attorney" because Fernández signed two conflicting waivers at 1:50 p.m.; and (2) the PRPD Miranda form was not given in order to interrogate Fernández but instead given to "partially document" an earlier Miranda warning given at 3:00 a.m.; therefore his right to remain silent was honored and a reasonable amount of time had passed before questioning was resumed by HSI.(Docket No. 115 p. 6.)[1]

The Court finds this argument unavailing. Fernández invoked his Fifth Amendment rights to counsel and to remain silent on the PRDP Miranda waiver form.  Here, as in Scott and Johnson, remaining silent and checking the "to not waive" option on the Miranda form would have placed a reasonable officer in Agent Gómez's position on notice that Fernández had requested the assistance of counsel. See Scott, 693 F.3d at 720; Johnson, 400 F.3d at 196; see also United States v. Soler-Muñiz, CR 19-247, ECF No. 59, 8 (D.P.R. Mar. 2020) (McGiverin, M,J.) (holding that a reasonable officer would understand the defendant wanted to exercise his right to

---

[1] The government also cites to United States v. Brown, 287 F.3d 965, 970 (10th Cir. 2002) for the proposition that conflicting answers on a Miranda form bar the defendant from claiming he unambiguously asserted his right to counsel. Brown is not persuasive here because in that case an intoxicated defendant entered conflicting answers on the same Miranda form. (emphasis added)  Here, officers furnished Fernández with multiple forms at the same time, but the PRDP Miranda waiver alone unambiguously states his desire to not waive his rights.

counsel by checking the "to not waive" option on the PRDP Miranda waiver form). If the Court is to believe that this form relates back to 3:00 a.m., then Fernández's invocation of his right to counsel should also relate back to 3:00 a.m., and he should not have been questioned without an attorney present. United States v. Oquendo-Rivas, 750 F.3d 12, 18 (1st Cir. 2014) ("Immediately after a suspect has invoked the right to counsel, all questioning must cease until such counsel is provided.") (quoting Edwards v. Arizona, 451 U.S. 477, 485 (1981).

Alternatively, if we are to take the PRDP form at face value and credit the official time stamp, as the Court is inclined to do given the issues with Agent Gómez's testimony, then the defendant invoked his right to remain silent at 1:50 p.m. See United States v. Rosario-Cintrón, 194 F. Supp. 3d 161, 173 (D.P.R. 2016) (Domínguez, J.) (holding that the defendant "properly and unambiguously invoked his right to remain silent" by indicating he was not willing to testify on a Miranda waiver form.) In this scenario, HSI's interrogation occurred in violation of Fernández's right to remain silent pursuant to the factors laid out in Mosley because: (1) no reasonable amount of time passed prior to the resumption of questioning because HSI officers questioned Fernández only minutes after he signed the PRDP Miranda waiver,

(2) while different officers resumed the questioning, [2] (3) it is unclear whether Fernández received additional Miranda warnings because the record does not indicate which form was signed first, and (4) it is undisputed that the questioning concerned the same alleged crime. See United States v. Lugo-Guerrero, 524 F.3d 5, 12 (1st Cir. 2008) (citing Mosley, 423 U.S. at 104-06). In either case, what is clear is that the Government cannot have it both ways. The waiver cannot relate back to 3:00 a.m. for purposes of Fernández's right to remain silent, but have been signed at 1:50 p.m. for purposes of his right to counsel.

Finally, it is important to state that the considerable confusion in this case was created by the Government. It was PRPD officers that provided Miranda waiver forms with unclear language and provided the defendant multiple waiver forms to sign at the same time. This Court "cannot interpret an ambiguity caused by the Government to be a waiver of [a] right that is indispensable to the protection of the Fifth Amendment privilege." Johnson, 400 F.3d at 197, (quoting Miranda, 384 U.S. at 469) (internal quotation marks omitted). To deem Fernández's statements admissible because of this confusion would encourage law enforcement officers to give

---

[2] Once a suspect invokes his Miranda rights, "knowledge of that request is imparted to all law enforcement officers who subsequently deal with the suspect." See United States v. Porter, 764 F.2d 1, 7 (1st Cir. 1985) (internal quotations omitted); United States v. Downing, 665 F.2d 404, 407 (1st Cir. 1981) ("Law enforcement officers working in teams should be discouraged from violating the accused's constitutional rights by failing to ascertain or advise one another whether those rights had been previously asserted.").

defendants multiple <u>Miranda</u> waivers to sign at a time in the hopes that one or more of the forms would contradict the others.

## IV. Conclusion

For the reasons discussed above, the Court **ADOPTS IN PART** and **REJECTS IN PART** the magistrate judge's R&R, (Docket No. 110), and **GRANTS IN PART** and **DENIES IN PART** defendant Fernández's motion to suppress. (Docket No. 20.) The contents of the black fanny pack found in Fernández's backyard, that is one firearm, two ammunition magazines, and two photo identifications cards, and any incriminating statement made to HSI regarding the black fanny pack and Fernández's status as a convicted felon are suppressed. The contents found inside the defendant's residence including one rifle and ammunition recovered from a blue backpack in the defendant's bedroom closet, and one cellphone will not be suppressed.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, February 8, 2024.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE